```
        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                FAYETTEVILLE DIVISION
```

**TERI L. MITCHELL**                                                    PLAINTIFF

        v.        Civil No. 05-5191

JOHN E. POTTER, POSTMASTER,
GENERAL, U.S. POSTAL SERVICE                                            DEFENDANT

## O R D E R

Now on this 9th day of April, 2007, comes on for consideration defendant's **Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment** (document #66), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. Plaintiff alleges that she was subjected to discrimination in her employment by the U.S. Postal Service on the basis of disability, sex, and race. The gravamen of her allegations is that defendant refused to accommodate her with a light duty assignment following breast cancer surgery.

2. Defendant now moves for dismissal or summary judgment on each of plaintiff's several claims, as follows:

    \*    as to plaintiff's claims of sex and race discrimination, he contends that those claims were not properly exhausted, and that plaintiff cannot make out a *prima facie* case as to them;

    \*    as to plaintiff's claim of disability discrimination, he contends that plaintiff is not disabled as that term is understood in Rehabilitation Act jurisprudence;

　　　*　as to plaintiff's claim for punitive damages, he contends that such damages are not recoverable as against the government; and

　　　*　finally, defendant moves for dismissal based on defects in the process used to bring him before the Court.

　　3.　Although defendant set forth his arguments relating to process last, the Court will address that issue first, inasmuch as it relates to the Court's jurisdiction: service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him." **Wright & Miller, <u>Federal Practice and Procedure: Civil 3d</u>, §1353.**

　　Defendant contends that the process in this matter is insufficient because plaintiff failed to obtain and serve a summons upon him, as required by **F.R.C.P. 4.**

　　Plaintiff responds that this admitted defect in process should be viewed as harmless error ("I contend that I was acting in good faith and Mr. Potter's rights have not been substantially affected") and that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties," citing **F.R.C.P. 61.**

　　4.　Plaintiff's contention that she was acting in good faith is not, in the Court's view, borne out by the procedural history of this case as is illustrated by the following brief review of

the history of this case since its filing:

(a) Problems over the naming of the defendant and service of process arose early, and have not been fully cured despite repeated opportunity to do so.

Plaintiff filed her initial Complaint on November 30, 2005, naming as defendant the "U.S. Postal Service." She obtained a Summons and attempted service by mailing copies of the Complaint and Summons to the U.S. Postal Service; the U.S. Attorney General; the Arkansas Attorney General; and Preston McWhirter, Manager of Labor Relations for the U.S. Postal Service.

When no answer was filed, plaintiff obtained a Clerk's Default on February 22, 2006.

At that point, on February 28, 2006, John E. Potter, Postmaster General of the U.S. Postal Service, filed an Answer in which he asserted, as one of several affirmative defenses, that process and service of process were insufficient because the Complaint "was not served with proper summons on John E. Potter, Postmaster General."

On March 7, 2006, defendant moved to set aside the default, reiterating this argument, and pointing out that plaintiff had been instructed, in the Agency's Notice of Final Action, how to properly name the defendant.

When plaintiff responded that "in every document filed I have named John E. Potter as the defendant," defendant filed a copy of

the Summons, which contains an address along with the name "U.S. Postal Service" in the space allocated for the style of the case, but is left blank in the space provided to indicate to the name and address of the defendant.

Given the content of the Complaint and the Summons, plaintiff's claim that she named Potter as the defendant "in every document filed" was clearly not correct as to these two crucial documents.

(b)  On June 2, 2006, the Court set aside the Default, noting that "[i]n a suit against the Postal Service the only proper defendant is its head, John E. Potter, Postmaster General," and that "proper service of process is necessary for the Court to acquire jurisdiction over a defendant."  Rather than dismiss, however, the Court gave plaintiff leave to amend her Complaint and perfect service.

(c)  An Amended Complaint was filed on June 6, 2006, which identified Potter as the defendant.

On June 15, 2006, defendant filed a Motion To Dismiss, which included the statement that "[t]he United States Attorney's Office does not know whether Plaintiff has properly served John E. Potter, Postmaster General, in his official capacity with complaint and summons as provided by Federal Rules of Civil Procedure, Rule 4(i)(2)(A), and reserves this issue until a reasonable time has occurred for Plaintiff to obtain service."

In response, plaintiff contended that she had properly served the defendant "when I presented copies of documents via certified return receipt mail to [defendant's attorney]," and that she was "enclosing another complete copy of the original complaint with this response to [defendant's attorney] via certified return receipt mail in order to insure compliance with this Court's Orders and FRCP 4(i)(1)(A)(B)(C) and 4(i)(2)(A). As stated in my Motion to Amend Complaint, heretofore I have not been provided with an address or designated representative to send a copy to Mr. Potter personally."

(d) On July 28, 2006, defendant filed an Amended Motion To Dismiss, in which he stated as follows:

> 3. As set forth in the Motion to Dismiss filed herein on May 25, 2006, service of complaint and summons must be served upon the U.S. Attorney for the Western District of Arkansas, the Attorney General and the Postmaster General of the U.S. Postal Service. Defendant is unaware of any attempt to obtain service upon the Postmaster General with the Amended Complaint and Summons. The Amended Complaint indicates service by certified mail upon the Assistant U.S. Attorney assigned to this case, but there is no indication that the Postmaster General was served with a copy of the Complaint or the Summons as provided by Federal Rules of Civil Procedure, Rule 4(i)(2)(A).
>
> 4. The proper procedure to serve the Postmaster General has been adequately set forth in the Court's Order and the Motions filed by the Defendant. The Plaintiff has failed to serve the Postmaster General within the time period set forth in the Court's order and this case should be dismissed.

In response, plaintiff made the following arguments:

I contend that by providing both the USPS Little Rock

>District and Southwest Area Offices with complete copies of the original filing that any reasonable person would agree that I acted in good faith to obtain proper service on John E. Potter. By maintaining my proper chain of command I actually saved the postal service time and money. Further, I contend that had I sent the original filing to John E. Potter, somewhere, Washington, D.C. we would now be arguing over why I broke that chain of command and did not properly serve his regional representatives. Further, during the Rule 26 teleconference with [defendant's attorney], he made it perfectly clear that he is the "designated legal representative" of John E. Potter and that "all future correspondence and communication" should be directed to him.

(e)  On September 13, 2006, the Court entered an Order granting defendant's Amended Motion To Dismiss.  The Order explained why plaintiff's various reasons for failing to perfect service were inadequate, and quoted from the applicable rule, to-wit:

>[s]ervice on an . . . officer . . . of the United States sued only in an official capacity, is effected by serving the United States in the manner prescribed by Rule 4(i) and by also sending a copy of the summons and complaint by registered or certified mail to the officer. . . .

(f)  On September 15, 2006, plaintiff filed a Motion To Court To Reconsider Order To Dismiss.  Therein, she made the surprising assertion that she had not served defendant because she could not obtain an address for him, and reiterated her previous arguments that defendant had notice of the suit.  She asked that the Court reconsider its order of dismissal and require defendant's attorney to furnish her with an address at which to serve him.

The Court was skeptical of plaintiff's assertion that she

-6-

could not obtain an address for the Postmaster General, but took into consideration that it was not aware of the degree of expertise plaintiff possessed in the use of the Internet; that the U.S. Postal Service website did not readily reveal the Postmaster's address; and that such address was quickly and easily found in a Google search.  The Court, therefore, granted the Motion To Reconsider on September 22, 2006, furnished plaintiff with the address of the defendant, and granted still more time for plaintiff to perfect service.

In this same Order, the Court cautioned plaintiff "that service of process is, by its very nature, a highly technical matter, governed by **F.R.C.P. 4**, and that the Court has no jurisdiction over a party who is not properly served, **Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.**, **526 U.S. 344 (1999)**."

(f)  Plaintiff then sent a mailing to defendant by certified mail, at the address supplied by the Court -- but it appears she did not obtain a new Summons directed to Potter.  Instead, it appears -- from plaintiff's submissions -- that the mailing included a copy of the original Complaint, a copy of the defective Summons issued in connection with the original Complaint, and a copy of the Amended Complaint.

(g)  On October 6, 2006, defendant filed an Answer which contained the following affirmative defense:

-7-

> The Court lacks personal jurisdiction over the Defendant because Plaintiff has failed to effect proper process is [sic] this matter. The Original Complaint and Amended Complaint were not served with proper summons on John E. Potter, Postmaster General, and therefore, the complaint should be dismissed. Rule 4(a) provides that a summons shall name the parties and shall be directed to the defendant. Plaintiff has failed to properly serve the Defendant with a summons listing the proper parties and directed to the Defendant, John E. Potter, Postmaster General. Plaintiff's Affidavit of Service filed herein on October 3, 2006, consists of Postal Service Forms without any statement as to what was served upon the Defendant. (Docket Entry 39). The Court's docket does not reflect issuance of a summons subsequent to the joinder of the Postmaster General as the Defendant.

(h) On February 20, 2007, defendant filed the motion now under consideration, and plaintiff responded by asserting her good faith.

(i) From the foregoing summary it can be seen that by September 22, 2006, plaintiff:

* had been given the citation to the applicable rule of procedure governing service of process;

* had been supplied with the address of the defendant;

* had been given two additional opportunities to perfect service; and

* had been cautioned that she must follow the technicalities of the rule to obtain service and thereby give the Court jurisdiction over the defendant.

Nevertheless, although she was put on notice by defendant's October 6, 2006, Answer that she still had not taken the proper steps to serve him, plaintiff still has not obtained a proper

Summons and served it upon the defendant.

(j) This procedural history does not, in the Court's view, represent a good faith attempt to comply with the rules governing service of process. In light of plaintiff's repeated assertions of her belief that all she has to do (to properly commence a suit in federal court) is make sure the defendant has notice of the suit against him, the Court believes the difficulty is simply an intractable stubbornness on plaintiff's part. The steps necessary to perfect service, although highly technical, are not difficult, and plaintiff has been given more than adequate assistance and opportunity to take the necessary steps. Her failure to follow rules which govern all litigants suggests a latent contemptuousness and the Court is not disposed to countenance it further.

Moreover, the plaintiff's disregard for and/or refusal to comply with known rules of procedure cannot be excused by her *pro se* status. The pleadings of *pro se* litigants are read liberally as to their substantive content, **Haines v. Kerner**, **404 U.S. 519 (1972)**, but such litigants are not excused from compliance with procedural rules and Court orders, **Ackra Direct Marketing Corp. v. Fingerhut Corp.**, **86 F.3d 852 (8th Cir. 1996)**.

5. The Court is likewise not persuaded that the procedural defect herein complained of is harmless error -- or one which does not affect substantial rights of the defendant. A summons is not

an idle piece of paper. It is "[a] writ or process commencing the plaintiff's action and requiring the defendant to appear and answer." **Black's Law Dictionary**, **8th Ed.** It is issued on a prescribed form, signed and sealed by the Clerk of Court, and commands the defendant to whom it is directed as follows:

> YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address) an answer to the complaint which is served on you with this summons, within ---- days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

The contents of a Summons are specified in the very first sentence of **F.R.C.P. 4**:

> The summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff.

The only Summons issued in this case identified the defendant as the U.S. Postal Service, rather than John E. Potter, Postmaster General, U.S. Postal Service. It was directed to the U.S. Postal Service, not to Potter. Thus both the Summons itself, and the service thereof, were defective, and could not serve to bring Potter before the Court.

A similar problem was analyzed in **Wasson v. Riverside County**, **237 F.R.D. 423 (C.D.Cal. 2006)**, wherein the court explained:

> Although the distinction between the Rule 12(b)(4) and

> 12(b)(5) motions is easy to state, the line between them becomes blurred when the alleged defect is that the defendant either is misnamed in the summons or has ceased to exist. In these cases, the form of the process could be challenged under Rule 12(b)(4) on the theory that the summons does not properly contain the names of the parties, or a motion under Rule 12(b)(5) could be made on the ground that the wrong party - that is, a party not named in the summons - has been served.

**237 F.R.D. at 424**, citing **Wright & Miller, Federal Practice and Procedure: Civil 3d, §1353** (quotation marks omitted). In **Wasson**, the court dismissed the claim against a party not named in either the complaint or the summons.

Although the defect here is one which could be corrected -- and ordinarily the Court would simply allow time to cure -- the peculiar circumstances of this case counsel against that disposition. Plaintiff has already been given two opportunities to properly name and serve the defendant; has been instructed on the rules that must be followed; and has even been furnished the defendant's address for service, yet she has not taken the necessary steps to perfect service. To grant yet another extension of time, and still more explanation to plaintiff about how she should go about serving defendant, would, in the Court's view, cross the line between the judicial and the adversarial functions. The Court is not permitted to assist either party in litigating her or his case, but must remain impartial and allow the adversaries to contend against each other.

In sum, the Court believes that it has reached the limit of

tolerance (by way of information, guidance, and additional time) that it can fairly afford to one party in this lawsuit and that providing further assistance to plaintiff in obtaining service upon defendant would amount to the *de facto* repeal of an important rule of federal civil procedure and would improperly benefit one litigant before the Court at the unfair expense of the other. Moreover, to do so would further delay the trial of a case that has been filed since November, 1995, and which has been repeatedly delayed to allow plaintiff time to correct deficiencies in naming the defendant and serving process. The Court, therefore, declines to offer plaintiff further assistance or delay.

The defendant has consistently and timely made his objections to the process from the beginning -- and the Court now concludes that they should be sustained, and the case dismissed.

6. Because the dismissal is not based on the substantive merits of plaintiff's claims, it will be without prejudice. However, because plaintiff may wish to re-file this action and thereby incur an additional filing fee and related costs, the Court will make the following observations:

Even if it were proper to allow plaintiff more time in which to achieve proper service on the defendant, the Court believes it would be, essentially, a futile act because of other problems with respect to her claims:

(a) The first of those problems goes to the issue of exhaustion of administrative remedies on the claims of

discrimination on the basis of sex and race. The regulations implementing Title VII provide as follows on the issue of exhaustion of administrative remedies:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

**29 C.F.R. §1614.105.**

There is good reason for this rule:

> Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.

**Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 222 (8th Cir. 1994).**

Plaintiff concedes that she failed to file charges of sex or race discrimination with the EEOC, although it is clear that she was aware of the need to file an EEOC charge to assert a discrimination complaint, because she did file such a charge with regard to her complaint of disability discrimination.

In her response to the pending Motion, plaintiff states that "the issues of discrimination based on the Civil Rights Act, Sex and Race, did not become apparent to me until some time after the

EEOC hearing." While this may well the true, the Court notes that plaintiff failed to file an EEO charge as to those issues when they did become apparent to her and, thus, they still remain unexhausted.

The Court would, if addressing the issue, consider whether plaintiff's sex and race discrimination claims can be said to be "like or reasonably related to" her disability discrimination claim, so as to allow her one formal EEOC charge to be deemed to encompass all three claims herein asserted. For that to happen, the "information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim." **Wallace v. DTG Operations, Inc.**, **442 F.3d 1112, 1123 (8th Cir. 2006).**

> An EEOC charge is
>
> sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge or developed during a reasonable investigation of the charge, so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding.

**E.E.O.C. v. Delight Wholesale Co.**, **973 F.2d 664, 668 (8th Cir. 1992).** While such charges are to be read liberally, especially when a plaintiff is proceeding *pro se*, there must be limits to such liberality. "'Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe

the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge'." **Williams**, *supra*, **21 F.3d at 223** (citation omitted).

The EEO Complaint of Discrimination in the Postal Service in the captioned case, filed on May 22, 2002, was completed with the assistance of a Dispute Resolution Specialist. The only box checked in Section 14, "Type of Discrimination You Are Alleging," was the "Disability" box. The narrative explanation of the situation is as follows:

> I was denied temporary light duty after breast cancer/lymph node removal surgery. The allegations of discrimination, harassment and favoritism are based on disability covered by Federal Law, USPS ELM, USPS management handbooks, APWU and LMOU contracts and past practice of management allowing light/limited duty to other employees.

An "Attachment to EEO Complaint" stated that plaintiff had surgery on April 9, 2002, and was released to return to work with restrictions on April 20, 2002. It stated that plaintiff repeatedly asked her Plant Manager for a light duty assignment, but her requests were refused. A second "Attachment to EEO Complaint" listed fifteen employees who had been granted light or limited duty assignments, all but three of whom were female. Plaintiff does not indicate her race or suggest that it played a part in the refusal go grant a light duty assignment. Nothing in the EEO Complaint of Discrimination or the Attachments contained

a clue that plaintiff had any complaint related to sex or race.

(b) Another problem is highlighted by defendant's contention that plaintiff cannot prove her claim of disability discrimination. He contends that her disabling condition was temporary, encompassing her recovery and treatment period following surgery, and as such does not constitute a disability under controlling law.

Controlling law in this case is the Rehabilitation Act of 1973, **29 U.S.C. §701 *et seq.*,** which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." **29 U.S.C. §794(a).**

The definitions of terms and standards for evaluation in the Rehabilitation Act are not fleshed out as they are in the Americans with Disabilities Act ("ADA"). Instead, the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated . . . shall be the standards applied" under the ADA. **29 U.S.C. §794(d).** Thus, a claim under the Rehabilitation Act is analyzed in the same fashion as a claim under the ADA. **Peebles v. Potter, 354 F.3d 761, 766, n.4 (8th Cir. 2004).**

Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more of the major life

-16-

activities of [an] individual," and when that major life activity is work, "substantially limits" requires a showing of inability to work in a broad class of jobs.  A temporary impairment with little or no long-term impact is not a disability.  **Samuels v. Kansas City Missouri School District**, **437 F.3d 797, 801 (8th Cir. 2006)**.

Plaintiff testified that she had surgery on April 9, 2002, and that she wanted to return to work on April 20, 2002, with some medical restrictions. She testified that as of July 29, 2002, she was under no work restrictions from her doctors.  It thus appears from plaintiff's own testimony, and evidence submitted by her, that the period when she could not fully perform her regular job lasted only from April 20 until July 29, 2002 - a little over three months.

Plaintiff also offered a document entitled Temporary Light Duty Offer, indicating that she was offered, and accepted, a light duty job offer on May 23, 2002.  Thus, of the brief period of disability, she actually was not offered an accommodation only from April 20 until May 23, 2002.  On these facts, the Court doubts that plaintiff could satisfy **Samuels** by showing that, in fact, she has a disability.

The foregoing analysis, while not as thorough as it would be if the Court were making a determination on the substantive issues, persuades the Court that further extensions of time to serve process in this matter would be futile, inasmuch as

plaintiff's substantive case shows little potential for success.

**IT IS THEREFORE ORDERED** that defendant's **Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment** (document #66) is **granted,** and this matter is **dismissed without prejudice.**

**IT IS SO ORDERED.**

       /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**